IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

KENNETH W. PENDLETON,

    Plaintiff,

v.

DEPUTY TILLESON and
NURSE LAVONDA HAYES,

    Defendants.

OPINION & ORDER

Case No. 18-cv-701-wmc

---

*Pro se* plaintiff Kenneth Pendleton filed this lawsuit under 42 U.S.C. § 1983, after he suffered an injury at the Dane County Jail on July 20, 2018. Specifically, Pendleton claims that jail officials violated his constitutional rights by ignoring the risks that led to his arm being trapped in a cell block sliding door, and then again by failing to treat him for the injuries he sustained. At screening, the court granted Pendleton leave to proceed on constitutional claims against two Dane County Jail employees: Deputy Tilleson and Nurse Lavonda Hayes.

Now before the court are the defendants' motions for summary judgment. (Dkt. ##66, 72.) Since the undisputed evidence of record does not support a reasonable finding that defendant Tilleson was present during (nor involved in any way with the events surrounding) Pendleton's injury, Tilleson is entitled to summary judgment. Further, while the evidence of record indicates that Nurse Hayes treated Pendleton for his injury, no reasonable fact-finder could conclude that she violated Pendleton's constitutional rights. Accordingly, the court will grant defendants' motions and direct entry of final judgment in their favor.

UNDISPUTED FACTS[1]

Dane County Jail cell blocks consist of two sections: the first usually includes a shower and bathroom, while the second includes a community area and individual cells. The first and second sections are separated by a sliding door with bars. The sliding doors are triggered by deputy sheriffs located in the "control box," which sits outside of the cell block itself. Typically, when conducting morning cell inspection, one deputy operates the control box and opens the outer sliding door to allow two, other deputies into the first section of the cell block. The deputy operating the control box will then close the outer sliding door, and after it is closed, open the inner sliding door, which allows the same two deputies into the second section of the cell block, where the community area and cells are located.

Starting in June of 2018, plaintiff Kenneth Pendleton was being held as a pretrial detainee at the Dane County Jail, having been arrested approximately a month before on multiple charges and detained following probable cause hearings. On July 20, 2018, while those charges were still pending, Pendleton was injured when a door to his cell block started to open with his arms hanging through the bars, trapping his arms for several seconds.

---

[1] Unless otherwise indicated, the following facts are material and undisputed. Although plaintiff filed a motion in opposition to defendants' summary judgment motions asking that the court not enter judgment against him, he did not file a response to defendants' proposed findings of fact or other evidence. As a result, the defendants' proposed facts are for the most part undisputed, even with the court incorporating plaintiff's allegations from his amended complaint, since they were sworn under penalty of perjury. *See Beal v. Beller*, 847 F.3d 897, 901 (7th Cir. 2017) (accepting a verified complaint "is also the equivalent of an affidavit for purposes of summary judgment").

The day Pendleton was injured, Dane County Jail Deputies Tsering, Boivin and Krahn were scheduled to conduct the morning cell inspection in Pendleton's cell block. However, Deputy Tilleson, the named defendant, was *not* involved in that morning's cell inspection. Moreover, on July 20, 2018, non-defendant Krahn was the deputy who operated the control box during the morning inspection and triggered the outer sliding door to Pendleton's cell block, letting Deputies Tsering and Boivin into the outer section of the cell block. Consistent with protocol, Deputy Krahn then closed the outer sliding door without issue, but as Deputy Krahn began to open the inner door, he heard Deputy Boivin yell "stop the door." At that point, Deputy Krahn observed that Pendleton had his arms in the sliding door. According to Krahn, Boivin then pushed the sliding door to prevent the door from fully opening, so that Pendleton's arms would not get stuck. Krahn also quickly closed the door shut, which allowed Pendleton to free his arms. As a result, Pendleton's arms were stuck in the door for no more than several seconds. Deputy Krahn also immediately asked Pendleton if he needed medical care, which Pendleton refused.

During his deposition, Pendleton testified that at the time his arms got stuck in the inner door, he was standing and in "deep thought." Thus, he neither saw Krahn operating the control box, nor saw or heard the opening and closing of the outer door, and only noticed that the inner door was being opened when that door started sliding. (Pendleton Dep. (dkt. #65) 22.) Pendleton further acknowledged that he was suing Deputy Tilleson but declined to state what Tilleson personally did wrong: "I'd rather not state that right now because I don't know what he did wrong. All I know is some bars opened up on my arms and he was at the control box." (*Id.* at 66.) Pendleton also testified about Tilleson

3

that: "I guess he didn't see me, but I wasn't paying him no attention." (*Id.* at 63.) Indeed, Pendleton stated that he did not actually *see* Tilleson in the control box until after Deputy Boivin had pushed the door to free his arm.

Later on the morning of July 20, 2018, Deputy Krahn was conducting a security check, noticed that Pendleton had his arms in the cell bars again, and reminded him to move his arms. Also later that morning, Krahn asked Pendleton again if he wanted medical attention for his arms, and that second time, Pendleton agreed his arm "hurt a little now." (Krahn Aff. (dkt. #70) ¶ 26.) At that point, the Medical Movement Deputy came down and took Pendleton to the nurse.

As a result, Nurse Hayes ended up examining Pendleton at around noon on July 20, 2018, some four hours after the original incident. In a "Musculoskeletal Nursing Documentation Pathway" form, Hayes then memorialized her original assessment. Specifically, Nurse Hayes noted that Pendleton reported his pain level at a 7 out of 10, and that he was experiencing "muscle spasms." (Wiesner Decl., Ex. A (dkt. #75-1) 35-37.) However, Hayes did not check the box indicating that Pendleton reported an impaired range of motion. (*Id.* at 36.) Hayes also noted Pendleton had proper tissue perfusion in his arm and exhibited "minimal restrictions in range of motion," nor did she note any bruises or change in the color of his arm. (*Id.* at 36-38.)

As a licensed Registered Nurse, Hayes lacked the authority to prescribe medications or order medical treatment plans for jail inmates. Therefore, Hayes relayed her findings to a non-defendant, medical provider who (1) approved Pendleton to receive Tylenol 650 mg twice daily for two days, and (2) advised that Pendleton reduce his activity, and should be

4

instructed on proper techniques, posture and body mechanics. Pendleton's records indicate that he received the Tylenol once on the day of the accident and twice the following day, July 21, as well as Aleve at least once a day from July 20 through July 28.

Nurse Hayes had no further interactions with Pendleton, although he did continue to report pain associated with the injury to health services. Indeed, on July 21, 2018, Pendleton complained of a sharp pain in his arm and that the Tylenol was ineffective. The next day, another non-defendant nurse met with Pendleton, after which he was prescribed Aleve for 30 days as needed. When Pendleton continued to complain to health services about pain through the end of July, he was instructed to continue taking the prescribed medications, as well as scheduled to see the medical provider for an assessment and a pain management plan.

On July 31, a provider approved renewal of Pendleton's two-day, Tylenol prescription, and on August 3, a non-defendant provider met with him. After that examination, the provider again ruled out deformity or swelling and confirmed a strong grip with some tenderness in Pendleton's "bicep insert," or the muscle group in the bicep area. That same provider also noted possible bicep tendonitis and gave Pendleton an exercise regimen and a three-day ibuprofen prescription.

While Pendleton continued to report pain in September, asking to see an outside doctor for throbbing pain, he refused to be seen for sick call on September 3, and the nurse who attempted to meet with him at that time noted that he moved his arms and walked around without difficulty. Another two weeks passed before Pendleton again requested off-site care. When that request was granted, an appointment was made at the Wingra

Family Medical Center on October 4, 2018, to assess Pendleton's shoulder. A provider at that clinic noted no weakness, numbness or swelling *and* declined to order an x-ray or other diagnostic testing, while opining that Pendleton might be suffering from rotator cuff impingement and recommending ibuprofen, lidocaine cream and physical therapy. After his return to the jail, Pendleton started taking aspirin, which he continued to receive through his October 18, 2018, discharge date from the jail. When he returned to the jail a few days later, Pendleton reported "chronic right shoulder pain" during an intake screening, but did not complain of arm pain or seek any treatment for his shoulder.

OPINION

The starting point at summary judgment for the claims asserted against both defendants is the applicable constitutional standard. Since plaintiff was a pretrial detainee as of July 20, 2018, the due process standard under the Fourteenth Amendment applies to plaintiff's claims. *Kingsley v. Hendrickson*, 576 U.S. 389 (2015). Specifically, to prove that a jail official violated plaintiff's Fourteenth Amendment rights, he must show that "the severity and the duration of the conditions experienced were so significant . . . that they violated the Constitution." *Hardeman v. Curran*, 933 F.3d 816, 824 (7th Cir. 2019).

Under that test, a plaintiff must demonstrate that "(1) the conditions in question are or were objectively serious (or if the claim is for inadequate medical care, his medical condition is or was objectively serious); (2) the defendant acted purposefully, knowingly, or recklessly with respect to the consequences of his actions; and (3) the defendant's actions were objectively unreasonable—that is, not rationally related to a legitimate governmental

6

objective or . . . excessive in relation to that purpose." *Id.* at 827 (Sykes, J., concurring) (citation omitted). Thus, that a jail official acted out of negligence or even gross negligence it is not enough to permit a finding that the official acted purposefully, knowingly or recklessly with respect to the consequences of his or her actions. *See Williams v. Ortiz*, 937 F.3d 936, 942 (7th Cir. 2019) (citing *McCann v. Ogle Cnty.*, 909 F.3d 881, 886 (7th Cir. 2018). Moreover, just as it sounds, the determination of whether a defendant's actions were "objectively unreasonable" is taken "from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Kingsley*, 576 U.S. at 397.

Under this standard, defendant Tilleson is obviously entitled to summary judgment given the complete lack of evidence that he was in any way responsible for plaintiff's injury. Indeed, to be held liable under § 1983, a plaintiff must prove each defendant's *personal participation or direct responsibility* for the constitutional deprivation. *Mitchell v. Kallas*, 895 F.3d 492, 498 (7th Cir. 2018) (citing *Wilson v. Warren Cnty.*, 830 F.3d 464, 469 (7th Cir. 2016)). Even though plaintiff maintains that Tilleson was "present" in the control box, plaintiff concedes he did not actually see Tilleson in the control box until *after* Deputy Boivin closed the door and freed his arms. Nor has plaintiff come forward with any evidence disputing sworn affidavits that it was Deputy Krahn, not Tilleson, who actually started opening the door that caught plaintiff's arms in the first place. Accordingly, Tilleson is entitled to summary judgment for lack of personal involvement.[2]

---

[2] For this reason, the court need not address Tilleson's alternative arguments, whether on the merits or on his assertion of qualified immunity.

Defendant Hayes is also entitled to summary judgment because no reasonable juror could find that her treatment of plaintiff was negligent, much less objectively unreasonable. To the contrary, while the record confirms that plaintiff reported significant pain (7 out of a possible 10) and muscle spasms some four hours after the injury, plaintiff does not dispute the accuracy of Hayes's contemporaneous notes indicating that she was unable to locate any bruising, discoloration or deformity that might suggest an obvious need for a further, immediate assessment by a qualified medical provider (whether a doctor or nurse practitioner capable of prescribing medications). Therefore, her decision to contact the medical provider instead, describe plaintiff's accident and symptoms, *and* then provide the pain relief intervention that provider prescribed, appears perfectly reasonable under the circumstances and certainly *not* objectively unreasonable. Indeed, as a registered nurse, Hayes's *only* options were limited to reporting plaintiff's symptoms and deferring to the provider's assessment and prescription, *unless* the provider's chosen approach would be *clearly* harmful to the patient. *See Holloway v. Delaware Cnty. Sheriff*, 700 F.3d 1063, 1075-76 (7th Cir. 2012) (nurse is entitled to rely on a doctor's instruction unless it is obvious that the doctor's advice will harm the prisoner); *Berry v. Peterman*, 604 F.3d 435, 443 (7th Cir. 2010) (a nurse's "deference may not be blind or unthinking, particularly if it is apparent that the physician's order will likely harm the patient"). Since no evidence even hints that Nurse Hayes had reason to believe, much less believed, the treatment the medical provider directed her to administer on July 20 would be obviously harmful *and* she was not subsequently involved in plaintiff's later pain complaints, there is no objective evidence to

8

support a reasonable finding that she objectively acted unreasonably. Accordingly, she, too, is entitled to entry of summary judgment.

ORDER

1. Defendant Tilleson's motion for summary judgment (dkt. #66) is GRANTED.
2. Defendant Lavonda Hayes' motion for summary judgment (dkt. #72) is GRANTED.
3. Plaintiff's motion asking the court to deny the motions for summary judgment (dkt. #78) is DENIED.
4. The clerk of court is directed to enter judgment in each defendant's favor and close this case.

Entered this 22nd day of April, 2022.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge